UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENDA J. BARR,

                    Plaintiff,              Civil Action No. 14-13477
                                            Honorable Robert H. Cleland
                                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 18]**

Plaintiff Glenda J. Barr ("Barr") brings this action pursuant to 42 U.S.C. §405(g),
challenging the final decision of Defendant Commissioner of Social Security ("Commissioner")
denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act
(the "Act"). Both parties have filed summary judgment motions [15, 18], which have been
referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the
Administrative Law Judge's ("ALJ") conclusion that Barr is not disabled under the Act.
Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment
[18] be GRANTED, Barr's Motion for Summary Judgment [15] be DENIED, and that, pursuant
to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

**A.      Procedural History**

On April 5, 2012, Barr filed an application for DIB, alleging a disability onset date of

June 29, 2008.  (Tr. 98-104).  This application was denied initially on May 30, 2012.  (Tr. 77-81).  Barr filed a timely request for an administrative hearing, which was held on April 17, 2013, before ALJ Timothy Christensen.  (Tr. 44-67).  Barr, who was represented by attorney Kiel Roeschke, testified at the hearing, as did vocational expert Scott Silver.  (*Id.*).  On May 22, 2013, the ALJ issued a written decision finding that Barr is not disabled.  (Tr. 30-40).  On July 11, 2014, the Appeals Council denied review.  (Tr. 1-5).  Barr timely filed for judicial review of the final decision on September 8, 2014.  (Doc. #1).

### B.      Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:   Even if the claimant is unable to perform his or her past

> relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Barr's Reports and Testimony[1]

In an undated disability report, Barr, who was born in 1972, indicated that she was 5'5" tall and weighed 330 pounds.[2] (Tr. 117, 145). She lived in a house with her husband and son. (Tr. 49, 137). She completed high school and took a childcare vocational preparation course. (Tr. 47, 118). Barr stopped working on June 29, 2008, after she suffered a back injury in a car accident. (Tr. 51). She alleges that she still suffers from a "herniated and torn disc," as well as nerve and muscle damage. (Tr. 117). She has undergone physical therapy, epidural steroid injections, and a rhizotomy; in addition, a specialist recommended a laminectomy, but she opted not to undergo this surgery for fear it would make her condition worse. (Tr. 60-61).

Barr testified that she still experiences constant low back pain, which "pinches the nerves" and "goes down [her] legs." (Tr. 52-53). The pain ranges from 4/10 to 10/10 on the pain scale, and worsens with walking, standing, and sitting. (Tr. 53). She is most comfortable

---

[1] The ALJ found that Barr's mental impairments are non-severe. (Tr. 32-33). Barr does not challenge this conclusion and cites only evidence related to her physical impairments in her motion for summary judgment. Consequently, the Court will limit its discussion to Barr's physical impairments.

[2] By the time of the administrative hearing in April 2013, Barr had undergone gastric bypass surgery and, as a result, lost approximately 80 pounds. (Tr. 50).

when sitting in a recliner with a heating pad on her lower back, which she does five or six times a day.  (Tr. 54).  She can stand for 15 minutes at a time, sit for 30 minutes at a time, and walk approximately ½ block.  (Tr. 53-54).  She uses a cane, which was recommended by her physical therapist and prescribed by her physician.  (Tr. 53, 143).  She has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing.  (Tr. 56, 61, 142).

Barr testified that she has difficulty with memory and concentration, because of the numerous medications she takes.  (Tr. 55, 58-59, 120).  She takes at least one nap per day.  (Tr. 55).  She does not sleep well at night and wakes every few hours due to pain.  (Tr. 56, 138).  She is able to drive and was certified by her physician for a permanent handicapped parking placard. (Tr. 56-57, 140, 422).  She is able to perform some household chores, such as washing dishes, preparing meals, shopping for groceries (using an electric cart), and doing laundry.  (Tr. 57-58, 139-40).  Although she has some difficulty putting on her socks and shoes, she can otherwise attend to her own personal care needs.  (Tr. 138).  She can lift five or ten pounds.  (Tr. 57).  She enjoys socializing with friends outside the home two or three times a week, attends church and her son's sporting events, and goes out to dinner once a week.  (Tr. 59, 141).[3]

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Barr's medical record.  In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Scott Silver testified as an independent vocational expert ("VE") at the administrative hearing.  (Tr. 62-65).  The VE characterized Barr's past relevant work as a bus attendant and

---

[3] In a third party function report dated May 1, 2012, Barr's mother, LaDonna Johnston, generally corroborated her daughter's statements.  (Tr. 129-36).

daycare worker as ranging from unskilled to semi-skilled in nature, and from light to medium in exertion.  (Tr. 62).  The ALJ asked the VE to imagine a claimant of Barr's age, education, and work experience, who could perform unskilled, light work, with the following additional limitations:  only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; no climbing ladders, ropes, or scaffolds, or operating foot controls; a sit/stand option is required, but exercising that option must not require her to be off task; and she must be able to use a cane to ambulate to and from the worksite.  (Tr. 62).  The VE testified that the hypothetical individual would not be capable of performing Barr's past relevant work.  (Tr. 62-63).  However, the VE testified that the hypothetical individual would be capable of performing the light jobs of office helper (3,400 jobs in the state of Michigan) and parking lot attendant (3,000 jobs), as well as the sedentary job of addresser (3,300 jobs).  (Tr. 62-64).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Barr is not disabled under the Act.  At Step One, the ALJ found that Barr did not engage in substantial gainful activity between her alleged onset date (June 29, 2008) and her date last insured (September 30, 2009).  (Tr. 32).  At Step Two, the ALJ found that Barr has the severe impairments of degenerative disc disease of the lumbar spine, status post-rhizotomy, radiculopathy, restless leg syndrome, hypertension, and obesity.  (Tr. 32-33).  At Step Three, the ALJ found that Barr's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 33-34).

The ALJ then assessed Barr's residual functional capacity ("RFC"), concluding that she is capable of performing unskilled, light work, with the following additional limitations:  only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; no

climbing ladders, ropes, or scaffolds, or operating foot controls; a sit/stand option is required, but exercising that option must not require her to be off task; and she must be able to use a cane to walk to and from the worksite.  (Tr. 34-38).

At Step Four, the ALJ determined that Barr is unable to perform her past relevant work. (Tr. 38).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Barr is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 38-40).  As a result, the ALJ concluded that Barr is not disabled under the Act.  (Tr. 40).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.    Analysis**

Barr argues that the ALJ erred in: (1) finding at Step Three that her impairments do not meet or medically equal Listing 1.04A; and (2) improperly discounting the August 2012 opinion of her treating physician, Dr. Richardson. (Doc. #15 at 17-29). Each of these arguments will be addressed in turn.

7

      1.     *The ALJ's Conclusion that Barr Does Not Have a Listing*
                *Level Impairment is Supported by Substantial Evidence*

Barr first challenges the ALJ's conclusion at Step Three that her impairments, whether considered alone or in combination, do not meet or medically equal Listing 1.04 (disorders of the spine). (Doc. #15 at 17-25).

      a.     *The ALJ's Obligation at Step Three*

Barr bears the burden of proving that her impairments meet or medically equal a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §404.1525(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, at *2 (6th Cir. Apr. 1, 2011). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers,* 582 F.3d at 653.

In this case, the ALJ found, in relevant part, that Barr has the severe impairments of degenerative disc disease of the lumbar spine, status post-rhizotomy, and radiculopathy. (Tr. 32-33). He then went on at Step Three to consider whether these impairments, alone or in combination, meet or medically equal a listed impairment. In doing so, the ALJ explicitly considered whether Barr's impairments satisfied Listing 1.04's requirements:

> Specifically regarding the requirements of listing 1.04, the medical evidence does not indicate that the claimant's degenerative disc disease of the lumbar spine, status-post rhizotomy, and radiculopathy resulted in nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively.

(Tr. 33-34). Barr now argues that the ALJ's Step Three determination "neglects to properly

analyze or explain" why her impairments do not meet or medically equal Listing 1.04A, and instead merely consists of a "regurgitation" of a portion of the language of the Listing and a summary conclusion that she does not meet its criteria. (Doc. #15 at 18-19). The Court disagrees.

Listing 1.04A contemplates disorders of the spine, including degenerative disc disease and spinal stenosis, which result in compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1, §1.04A. As set forth above, the ALJ explicitly considered this Listing in his decision, concluding that Barr's impairments fail to satisfy its criteria. (Tr. 33-34). To the extent that Barr argues that the ALJ's analysis was insufficient, or that he was required to explain his conclusions in greater detail, such an argument fails.

It has been recognized that, "The Sixth Circuit has consistently rejected a heightened articulation standard, noting … that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). The *Staggs* court further stated, "Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, *supra*, at *3 (citing *Bledsoe, supra*, at 411); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL 4897364, at *6 (E.D. Mich. Sept. 14, 2012). In this case, as discussed below, the plain language

9

of the ALJ's decision, read in its entirety, makes clear that the ALJ thoroughly considered and discussed the evidence supporting his Step Three finding, and that his conclusion at Step Three is supported by substantial evidence.

b.     *Substantial Evidence Supports the ALJ's Step Three Finding*

In her brief, Barr asserts that there is "ample evidence reasonably supporting a meeting or medically equaling of Listing 1.04(A)." (Doc. #15 at 20). A review of the evidence of record, however, indicates just the opposite.

As the ALJ noted, Barr has a history of radiating neck and low back pain stemming from a motor vehicle accident that occurred on June 29, 2008. (Tr. 35, 316, 327). X-rays of her right shoulder and cervical spine taken at that time were negative. (Tr. 365-66). She presented to her treating physician, Stephen Richardson, D.O., on July 3, 2008, with complaints of shoulder, neck, and back pain. (Tr. 293). On examination, she had right-sided paraspinal muscle tenderness and a positive shoulder impingement sign on the right. (Tr. 294). At her next visit, on July 16, 2008, she continued to have paraspinal tenderness, bilateral shoulder tenderness, and shoulder pain with abduction. (Tr. 290-91). At a follow-up visit to Dr. Richardson on July 29, 2008, similar observations were made on examination. (Tr. 285-86). During this period of time, Barr was undergoing physical therapy; by late-August 2008, she reported that her neck pain was "80% better," but she was continuing to experience pain in her lumbar and thoracic spines. (Tr. 282, 328).

At a visit to Dr. Richardson on September 17, 2008, Barr complained of back pain without radiculopathy. (Tr. 276). On examination she had only bilateral lower and middle paraspinal muscle tenderness. (*Id.*). Dr. Richardson ordered a lumbar spine MRI, which was performed the next day, and revealed a "small central herniation at L5-S1 without impingement."

10

(Tr. 337). Subsequently, he referred Barr to Andrea Tann, M.D., for injection therapy. (Tr. 275, 350-51). Dr. Tann's initial examination revealed point tenderness along Barr's spine and pain in her left posterior superior iliac spine ("PSIS"), but she otherwise appeared normal, with negative straight leg-raising and intact strength, sensation, and gait. (Tr. 351). Dr. Tann administered a series of three epidural injections between October and December 2008. (Tr. 338, 341, 352-53).

When Barr saw Dr. Richardson again, on October 14, 2008, she reported that a TENS unit had been helping her back pain. (Tr. 261). She continued to show no objective physical deficits other than paraspinal muscle tenderness. (*Id.*). An x-ray of Barr's thoracic spine performed on October 22, 2008, showed only "[m]ild degenerative changes." (Tr. 363-64). On October 27, 2008, at Dr. Richardson's suggestion, Barr presented to John Maltese, M.D., for a consultative examination. (Tr. 183-84). She reported pain in her mid-back and low back, but indicated that her initial neck and shoulder pain had resolved. (Tr. 183). On examination, Barr had pain-free range of motion in her neck, shoulders, and hips, and a Spurling's maneuver was negative for radicular symptoms. (Tr. 184). She had paraspinal tenderness, some SI joint tenderness, and discomfort with extension of the back. (*Id.*). However, her strength, sensation, reflexes, and gait were all normal, and she had a negative straight-leg raising test. (*Id.*). Dr. Maltese recommended an MRI of Barr's thoracic spine and electrodiagnostic studies. (*Id.*). The MRI, which was performed on November 7, 2008, was negative for any herniated disc or cord compression. (Tr. 336). The November 2008 EMG revealed membrane irritability in the left lumbosacral paraspinal muscles and gastrocnemius, consistent with left S1 radiculopathy. (Tr. 180-82, 235).

During this same period of time, Barr also presented to John Karazim, M.D., for a lumbar and thoracic spine evaluation. (Tr. 172-77). At the examination, Barr sat uncomfortably but was

11

able to transfer from sitting to standing with some difficulty.  (Tr. 174).  She reported no pain on palpation, stood erect, and had a normal gait.  (*Id.*).  Her lumbar range of motion was restricted; she was able to walk with difficulty on her toes and heels; and she was unable to squat.  (Tr. 175).  She had normal sensation in both legs, but straight-leg raising produced low back pain. (*Id.*).  Dr. Karazim recommended physical therapy and characterized Barr's prognosis as "good." (Tr. 176-77).

At a December 11, 2008 visit to Dr. Maltese, Barr reported that the "current therapy [epidural injections] is going quite well, and she is happy with her progress."  (Tr. 178).  On examination, Barr had some paraspinal muscle and SI joint tenderness, but her gait was stable and her straight-leg raising test was negative.  (*Id.*).  Nevertheless, Dr. Maltese referred her to an orthopedic surgeon because "her progress is still slow."  (*Id.*).  At follow-up visits to Dr. Richardson between January and July 2010 (well after Barr's date last insured), he consistently found only paraspinal muscle tenderness (Tr. 191, 201, 214, 226, 230, 459, 468, 471) and, on occasion, mildly reduced flexion or extension of the lower spine (Tr. 191, 201, 214).

As the ALJ noted, on April 27, 2009, Barr presented to another pain management specialist, Kevin Lee, M.D.  (Tr. 35, 328-30).  On examination, Barr had "exquisite tenderness" over the paraspinal area in the lumbar region bilaterally, significant worsening of back pain on extension, and a positive straight-leg raising test on the left.  (Tr. 329).  At the same time, she was able to flex forward and showed normal strength, muscle tone, and bulk; had grossly intact sensation; and had normal deep-tendon reflexes.  (*Id.*).  Dr. Lee reviewed Barr's earlier MRI and EMG/nerve conduction studies and concluded that she "may eventually benefit from a lumbar facet rhizotomy procedure."  (Tr. 329-30).  In the meantime, Dr. Lee ordered diagnostic lumbar facet blocks (performed on May 12, 2009) and a diagnostic lumbar discogram (performed on

12

May 19, 2009).  (Tr. 330).  The discogram showed "evidence of a disruption of the posterior annulus of the disc" at L5-S1.  (Tr. 326).  A follow-up CT scan of Barr's lumbar spine performed on May 19, 2009, showed a mild broad-based disc bulge at L5-S1, which resulted in "minimal flattening [of] the anterior thecal sac which does not contribute to any central canal stenosis at this level."  (Tr. 324).  In addition, "The neural foramina [were] widely patent at this level with the exiting nerves and nerve roots exiting [in the] usual fashion."  (*Id.*).

On June 1, 2009, Barr told Dr. Lee had she had experienced "at least 45% relief" of her low back pain with the recent facet blocks.  (Tr. 322).  Dr. Lee indicated an impression of discogenic pain at L5-S1, along with left S1 radiculopathy, and recommended a lumbar facet rhizotomy procedure.  (*Id.*).  This procedure was performed on June 19, 2009, and provided "good relief."  (Tr. 318, 320-22).[4]  According to a June 30, 2009 discharge note, Barr was experiencing positive results with physical therapy until her insurance coverage ran out.  (Tr. 300).  Her prognosis was good and she was instructed to continue with a fitness program.  (*Id.*).

In February 2010, approximately four months after Barr's date last insured, she returned to Dr. Lee complaining that she remained "disabled and unable to work," with leg pain accounting for "80% of the pain that she is experiencing."  (Tr. 316).  Based on the November 2008 EMG/nerve studies showing S1 radiculopathy, Dr. Lee's impression was that Barr "likely has pinching of the S1 nerve roots."  (*Id.*).  He suggested that she might benefit from a "lumbar laminectomy procedure and discectomy to decompress the S1 nerve roots."[5]  (*Id.*).

The ALJ further noted that, on August 24, 2012, Dr. Richardson completed a "Physical Residual Functional Capacity Questionnaire," in which he opined that, as of September 30, 2009,

---

[4] In December 2009, after her date last insured, Barr underwent a right-sided rhizotomy, which provided less relief.  (Tr. 316-19).

[5] Barr testified that she elected not to undergo this procedure because Dr. Richardson advised against it.  (Tr. 60-61).

Barr's physical and mental symptoms were frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks, but that she might be capable of working in a low-stress situation.  (Tr. 37, 414-17).  He opined that Barr could walk less than one block; sit for 30 minutes at one time; and stand for 15 minutes at one time.  (Tr. 415).  He also opined that she could sit, stand, or walk for a total of less than two hours in an eight-hour workday; needed to walk around every 20 minutes for five minutes at a time; required a sit/stand at will option; needed to take unscheduled breaks every 15 to 30 minutes; and required an assistive device to ambulate.  (Tr. 416).  Dr. Richardson opined that Barr could rarely lift up to 20 pounds and occasionally lift less than 10 pounds; could rarely stoop, crouch, or climb stairs; could never climb ladders; could occasionally perform all other postural activities; and could reach for only five percent of the workday.  (Tr. 416-17).  As objective support for his conclusions, Dr. Richardson cited Barr's spinal tenderness, reduced flexion and extension due to pain, and 2/4+ patellar and Achilles reflexes.[6]  (Tr. 414).

As set forth above, in order for Barr to meet the criteria of Listing 1.04A, she must first show "[e]vidence of nerve root compression."  Critically, she has failed to do so here.  Her September 2008 lumbar spine MRI showed a "small central herniation at L5-S1 *without impingement*."  (Tr. 337 (emphasis added)).  Similarly, a November 2008 MRI of Barr's thoracic spine was negative for any herniated disc or cord compression.  (Tr. 336).  And, a CT scan of Barr's lumbar spine performed in May 2009 showed that the neural foramina at L5-S1 were

---

[6] As the Commissioner points out, Dr. Richardson purportedly assessed Barr's functioning as of September 30, 2009, her date last insured.  (Doc. #18 at 11 (citing Tr. 65, 414)).  However, Dr. Richardson's treatment notes from that time period do not reflect clinical findings of reduced motion or 2/4+ patellar or Achilles reflexes.  Specifically, on August 19, 2009, Dr. Richardson observed that Barr had spinal tenderness, but no other clinical abnormalities.  (Tr. 478).  And, on October 28, 2009, her spine was still tender, but she was neurologically intact, with normal strength, tone, major deep-tendon reflexes, and sensorium.  (Tr. 475).

widely patent, "with the exiting nerves and nerve roots exiting [in the] usual fashion."  (Tr. 324).

Where, as here, the objective medical evidence affirmatively shows that there is no nerve root compression, Barr cannot meet her burden at Step Three by relying on symptoms – such as radiating pain – that sometimes suggest nerve root compression.  *See Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709 (E.D. Mich. 2011) ("An implication, based on radiating pain, is not enough to satisfy the Listing."); *see also Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634, at *5 (S.D. Ohio Mar. 25, 2009) (treating physician's opinion that plaintiff met Listing 1.04A was insufficient where medical records stated there was no nerve root compression).  Thus, where Barr has failed to offer evidence of nerve root compression, any error in the ALJ's Step Three analysis is harmless.[7]  *See, e.g., Elkins v. Astrue*, 442 F. App'x 406, 407 (10th Cir. 2011) (any error in ALJ's Step Three analysis was harmless where the plaintiff "presented no evidence of nerve-root compression, one of the requirements of Listing 1.04(A)"); *Hines v. Comm'r of Soc. Sec.*, 2014 WL 6390231, at *9 (S.D. Ohio Nov. 14, 2014) ("Here, there is no evidence of nerve root compression, and plaintiff does not meet the requirements of 1.04A as a result."); *Daniels-Richardson v. Comm'r of Soc. Sec.*, 2010 WL 6001600, at * 3 (E.D. Mich. Sept. 2, 2010) (plaintiff did not meet Listing 1.04A where no evidence of nerve root compression).

---

[7] The Court recognizes that, in February 2010 – more than four months after Barr's date last insured – Dr. Lee opined that Barr "likely has pinching of the S1 nerve roots."  (Tr. 316).  Dr. Lee appears to have reached this conclusion based on a review of the results of the November 2008 EMG/nerve studies (which showed the presence of an S1 radiculopathy), as well as the September 2008 lumbar spine MRI (which showed a "small central herniation at L5-S1 without impingement").  (Tr. 316, 336-37).  Given the fact that both Dr. Richardson and the physician who interpreted the MRI agreed that nerve root-impingement was *not* the source of Barr's back pain (Tr. 260, 267, 337), as well as the other evidence discussed above, Dr. Lee's somewhat equivocal diagnosis ("*likely*" has pinching of the nerve roots) does not constitute evidence of nerve root compression sufficient to satisfy Listing 1.04A.  On the other hand, the two doctors' specific negative findings as to nerve root impingement constitute substantial evidence in support of the ALJ's conclusion as to Listing 1.04.  *See supra* at 7; *Cutlip*, 25 F.3d at 286; *Blakley*, 581 F.3d at 406.

15

Moreover, even if the Court were to find evidence of nerve root compression, Barr has not shown the requisite evidence of "motor loss" (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04A. Indeed, Barr's motor functioning (strength, bulk, tone, sensation, and reflexes) was consistently normal prior to her date last insured (Tr. 184, 214, 226, 235, 275, 329, 346, 351, 388, 475, 478), which precludes a finding that she meets Listing 1.04A. *See Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529-30 (6th Cir. 2006) (plaintiff's failure to meet all of the "strict requirements" of Listing 1.04A was fatal to her claim).

Having failed to produce evidence that she *meets* this Listing, Barr was required to present evidence that her impairment was *equivalent* to this (or any other) Listing. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). She failed to do so,[8] and the ALJ's conclusion that she does not meet or medically equal a Listing is supported by substantial evidence as discussed above.

> 2. *The ALJ Gave "Good Reasons" for Discounting Dr. Richardson's Opinion*

Barr also challenges the ALJ's decision to give "little weight" to the August 2012 opinion of her treating physician, Dr. Richardson. (Doc. #15 at 25-29). In that opinion, Dr. Richardson opined that, as of September 30, 2009 (her date last insured), Barr's physical and mental symptoms were frequently severe enough to interfere with the attention and concentration

---

[8] Barr does identify evidence in the record indicative of a serious back impairment. (Doc. #15 at 20-24). But that issue is not in dispute – indeed, at Step Two, the ALJ determined her back impairment to be "severe." (Tr. 32). Rather, at Step Three, Barr was required to show that she met or medically equaled the applicable listing, and she clearly cannot do that simply by showing evidence of a severe impairment; to hold otherwise would be to eviscerate Step Three as a separate requirement. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (holding that in order to establish medical equivalency, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original); *see also* 20 C.F.R. §404.1526(a) (defining "medical equivalence" as a showing that an impairment "is at least equal in severity and duration to the criteria of any listed impairment.").

16

needed to perform even simple work tasks, but that she might be capable of working in a low-stress situation; that she could walk less than one block, sit for 30 minutes at one time, and stand for 15 minutes at one time; that she could sit, stand, or walk for a total of less than two hours in an eight-hour workday; that she needed to walk around every 20 minutes for five minutes at a time, required a sit/stand at will option, needed to take unscheduled breaks every 15 to 30 minutes, and required an assistive device to ambulate; that she could rarely lift up to 20 pounds and occasionally lift less than 10 pounds; and that she could rarely stoop, crouch, or climb stairs, could never climb ladders, could occasionally perform all other postural activities, and could reach for only five percent of the workday.  (Tr. 414-17).  Barr argues that the ALJ failed to give "good reasons" for discounting this opinion.

The law is clear that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakely*, 581 F.3d at 406 (internal quotations omitted).  While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole.  *Soc. Sec. Rul.* 96-2p, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").  If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

17

with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In this case, the ALJ considered Dr. Richardson's August 2012 opinion and explained that it was entitled to "little weight" because:

> His own treatment notes do not support such a restrictive residual functional capacity as they consistently showed that [Barr] had paraspinal muscle tenderness and mildly reduced range of motion in her lumbar spine.  Moreover, his opinion is not consistent with the record as a whole, which showed that [Barr] reported pain at a four and a two on a scale of one to ten.

(Tr. 37) (internal citations omitted).  Barr claims that the ALJ's reasoning is "vague and conclusory" and that he has not articulated "good reasons" for rejecting Dr. Richardson's opinion.  (Doc. #15 at 27).  The Court disagrees.[9]

Barr first challenges the ALJ's reliance on mild objective findings (i.e., paraspinal muscle tenderness and mildly reduced range of motion) to discount Dr. Richardson's opinion.  (Doc. #15 at 28).  Specifically, Barr asserts that "the fact that [she] demonstrated paraspinal muscle tenderness and reduced range of motion is certainly no reason to discredit the most longitudinal opinion contained in the record."  (*Id.*).  A fair reading of the ALJ's opinion, however, reveals that the ALJ discounted Dr. Richardson's opinion not *because* he documented tenderness and mildly reduced range of motion (which would tend to indicate at least some degree of physical limitation), but because these are the *only* supportive findings, and because they are inconsistent with other substantial record evidence.  (Tr. 37).  Indeed, as the ALJ noted, Dr. Richardson's

---

[9] The Court also rejects Barr's argument (Doc. #19 at 6-7) that remand is required because the ALJ did not explicitly discuss certain discrepancies identified by the Commissioner.  The mere fact that the Commissioner identified *additional* record evidence that allegedly supports the ALJ's analysis does not undermine an otherwise valid analysis by the ALJ.  This is precisely why courts hold that an ALJ "can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky*, 167 F. App'x at 508.

assessment of disabling limitations simply does not square with his own treatment notes, which contain relatively mild clinical findings, including normal gait, station, and posture; negative Romberg sign; intact cranial nerves; and normal strength, tone, major deep-tendon reflexes, and sensorium.  (Tr. 35 (citing Tr. 213-14, 37; *see also* Tr. 235, 276, 475).

Similarly, Barr argues that, in discounting Dr. Richardson's opinion, the ALJ improperly relied on Barr's "one-time report" of pain scores on a physical therapy discharge report in June 2009.  (Doc. #15 at 28).  Barr claims that such "limited evidence bears no weight upon Dr. Richardson's medical source opinion."  (*Id.*).  As the Commissioner persuasively argues, however, Barr's reduced pain level just a few months prior to her date last insured is relevant in evaluating Dr. Richardson's opinion that she suffered from disabling pain through this date.  (Doc. #18 at 25 (citing 20 C.F.R. §404.1527(c) (ALJs may consider "any factors" that tend to support or contradict the opinion)); *see also Johnson v. Comm'r of Soc. Sec.*, 2013 WL 4799156, at *7 (E.D. Mich. Sept. 9, 2013) (plaintiff's statements about pain to treatment providers were inconsistent with his allegations of disabling pain).  If the ALJ had relied *exclusively* on Barr's one-time reported pain scores in discounting Dr. Richardson's opinion, Barr's argument would be stronger.  In this case, however, where the ALJ also relied on the fact that Dr. Richardson's opinion was at odds with his own treatment notes from the relevant period of time, the ALJ's decision to discount this opinion is supported by substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [18] BE GRANTED, Barr's Motion for Summary Judgment [15] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: July 8, 2015                         s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge


## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 8, 2015.

         s/Eddrey O. Butts     
         EDDREY O. BUTTS
         Case Manager